UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| TONYA LEE MASON, | Case No. 22-10012 |
| Plaintiff, | Matthew F. Leitman |
| v. | United States District Judge |
| COMMISSIONER OF SOCIAL SECURITY, | Curtis Ivy, Jr. |
| | United States Magistrate Judge |
| Defendant. | |
| _____/ | |

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 12, 14)**

Plaintiff Tonya Lee Mason ("Mason") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Title XVI Social Security Act (the "Act"). This matter is before the Court on Plaintiff's motion for summary judgment (ECF No. 12) and Commissioner's cross-motion for summary judgment (ECF No. 14), pursuant to 28 U.S.C. § 636(b)(1)(B).

For the reasons below, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 12), **GRANT** Defendant's motion for summary judgment (ECF No. 14), and **AFFIRM** the Commissioner's decision.

## I.     DISCUSSION

### A.     Background and Administrative History

This is Plaintiff's second application for disability benefits.  (ECF No. 10, PageID.61).  Her initial application and subsequent hearing were denied.  (*Id.*). In the current matter, Plaintiff alleges her disability began on December 15, 2018, at the age of 49.  (*Id.*).  She filed a Title II application for a period of disability and disability insurance benefits (DIB) on April 2, 2019.  (*Id.*).  On the same day, she filed a Title XVI application for supplemental security income ("SSI").  (*Id.*).  In her disability report, she listed several ailments which diminished her ability to work.  (*Id.* at PageID.277).  The ailments included: (1) blind or low vision; (2) dizziness; (3) easily confused; (4) hard of hearing; (5) depression; (6) neck pain; (7) right shoulder pain; (8) right arm pain; (9) anxiety; (10) and asthma.  (*Id.* at PageID.277).  Her applications were denied on August 6, 2019.  (*Id.* at PageID.61).

Following the denial, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (*Id.* at PageID.61).  On December 10, 2020, ALJ Mikel Lupisella held a hearing, at which Plaintiff, her non-attorney representative, Dannelly C. Smith, and a vocational expert ("VE"), Heather Smith, testified.  (*Id.* at PageID.84).  Plaintiff voluntarily elected to withdraw her request for hearing pertaining to period of disability and disability insurance benefits.  (*Id.* at

PageID.61).  On January 26, 2021, the ALJ issued an opinion, which determined that Plaintiff was not disabled under the Social Security Act during the timeframe alleged and subsequently dismissed the review.  (*Id.* at PageID.48; 76).

Plaintiff submitted a request for review of the hearing decision.  (*Id.* at PageID.48).  On November 1, 2021, the Appeals Council denied Plaintiff's request for review.  (*Id.*).  Therefore, the ALJ's decision became the final decision of the Commissioner.  (*Id.*).

Plaintiff timely commenced the instant action on January 4, 2022.  (*Id.* at PageID.50).

### B.    Plaintiff's Medical History

Plaintiff has the following severe impairments: status-post stroke with vertigo, obesity, right homonymous hemianopsia, dyslipidemia, asthma, degenerative disc disease, bipolar disorder, generalized anxiety disorder, and substance use disorder.  (ECF No. 10, PageID.64).  Plaintiff asserts that the ALJ's determinations stem from legal error, so the Court shall not summarize the totality of Plaintiff's lengthy medical record here.  The relevant portions of Plaintiff's medical record are discussed as required in the analysis portion of this report and recommendation.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. § 416.920(a)(4), at **Step 1** of the sequential evaluation

process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 2, 2019, the amended alleged onset date. (ECF No. 10, PageID.64). At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: status-post stroke with vertigo; obesity; right homonymous hemianopsia; dyslipidemia; asthma; degenerative disc disease; bipolar disorder; generalized anxiety disorder; and substance user disorder. (*Id.*) At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.*) **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined that Plaintiff had the RFC:

> to perform light work . . . except she cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally balance on narrow, slippery, or erratically moving surfaces; can occasionally stoop, kneel, crouch, and crawl; can frequently, but not constantly, reach in all directions with the bilateral upper extremities; can frequently, but not constantly, handle, finger, and feel with the bilateral upper extremities; can frequently, but not constantly, push and/or pull with the bilateral upper extremities, including the use of hand controls; can frequently, but not constantly, push and/or pull with the bilateral lower extremities, including the use of foot controls; can have only occasional exposure to extreme heat, extreme cold, wetness, and humidity; can have only occasional exposure to atmospheric conditions in the work setting, such as dust, odors, fumes, gases, and

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. § 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

> poor ventilation; can have occasional exposure to
> vibration, such as vibratory tools or machinery; cannot
> operate a motor vehicle as part of the work duties; needs
> to avoid activities requiring working at hazardous
> unprotected heights and with hazardous machinery,
> which includes working with conveyors, blades, and
> hazardous electrical work; and is limited to simple and
> routine tasks performed in a work environment free of
> fast-paced production requirements (i.e. no work on an
> assembly line), involving only simple, work-related
> decisions and routine work place changes.

(*Id.* at PageID.68).  At **Step 4**, the ALJ determined that Plaintiff was unable to

perform any past relevant work.  (*Id.* at PageID.74-75).  At **Step 5**, considering

Plaintiff's age, education, work experience, and RFC, the ALJ determined there

were existing jobs in significant numbers within the national economy that Plaintiff

could perform, such as inspector/hand packager, small products assembler, and

garment sorter.  (*Id.* at PageID.75-76).  Therefore, the ALJ concluded that Plaintiff

had not been under a disability, as defined in the Social Security Act, from April 2,

2019, through the date of the decision.  (*Id.* at PageID.76).

### D.      Framework for Disability Determinations

Disability is defined in the Social Security Act as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death or which has lasted

or can be expected to last for a continuous period of not less than 12 months."  42

U.S.C. § 423(d)(1)(A).  In evaluating whether a claimant is disabled, the

Commissioner is to consider, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. § 416.920.[2]  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Sec'y of Health & Hum. Servs.*, 735 F.2d 962, 964 (6th Cir. 1984).

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[T]he findings of the Commissioner of Social Security

---

[2] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless otherwise indicated.

as to any fact, if supported by substantial evidence, shall be conclusive […].").

Under this standard, "substantial evidence is defined as 'more than a scintilla of

evidence but less than a preponderance; it is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the

Court does "not try the case *de novo*, resolve conflicts, in evidence or decide

questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court,

to evaluate the credibility of witnesses, including that of the claimant.").

        Although the substantial evidence standard is deferential, it is not trivial.

The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487

(1951)).  Even so, "if substantial evidence supports the ALJ's decision, this Court

defers to that finding 'even if there is substantial evidence in the record that would

have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581

F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a

decision of the Commissioner will not be upheld where the SSA fails to follow its

own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting

*Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**F.    Analysis**

Plaintiff makes two arguments for remand.  She contends the ALJ's decision

was not supported by substantial evidence because the ALJ failed to properly

evaluate (1) the opinion evidence of Carrie Maddox, MSW, and (2) Plaintiff's

subjective complaints pursuant to SSR 16-3p. (ECF No. 12, PageID.988, 991).

*1.  The ALJ Provided Reasons for Discounting Maddox's Medical Opinion*

Plaintiff argues the ALJ erred in failing to discuss the supportability factor

of Ms. Maddox's opinion under the new SSA regulations for evaluating opinion

evidence.  (ECF No. 12, PageID.988-89).  Social worker Carrie Maddox

performed a mental functional capacity questionnaire on Plaintiff on an unknown

date.  (ECF No. 12, PageID.985).  The Commissioner contends the ALJ evaluated

Ms. Maddox's opinion and determined it was not persuasive because it conflicted

with the overall record of evidence.  (ECF No. 14, PageID.1008).

The ALJ will assess both treating and non-treating medical evaluations

based on how well they are supported by the rest of the record.  20 C.F.R. §

416.920c(a) ("We will not defer or give any specific evidentiary weight, including

controlling weight, to any medical opinion(s) or prior administrative medical

finding(s), including those from your medical sources."); *Creter v. Saul*, 2021 WL 809323, at \*9 (N.D. Ohio Mar. 3, 2021).  The factors an ALJ must consider in evaluating medical opinions include supportability and consistency with the record as a whole; relationship with the claimant; length of the treatment relationship; frequency of examinations; purpose and extent of the treating relationship; whether the source has examined the claimant; specialization; and any other factors that support or undermine the medical opinion.  §§ 404.1520c(c), 416.920c(c).  The ALJ must articulate how they "considered the supportability and consistency factors for a medical source's medical opinions" but "are not required to. . . explain" the consideration of the other factors.  20 C.F.R. § 416.920c(b)(2); *see Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 905 (E.D. Mich. 2021).

Though Plaintiff argues the ALJ's review of Ms. Maddox's opinion was inadequate and failed to discuss or evaluate the opinion evidence, an ALJ need not explain his evaluation of each portion of a medical source's opinion.  20 C.F.R. § 416.920c(b)(1) ("We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.").  If the ALJ sufficiently explains the supportability and consistency of a medical opinion, he has sufficiently evaluated the medical opinion under the regulations.  20 C.F.R. § 416.920c(b)(2); *see Suggs v. Saul*, 2020 WL 5880966, at

*3 (W.D. Ky. Oct. 2, 2020) (the ALJ's "brief discussion" of an opinion complied with the regulations).

Under the regulations, "supportability" means the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). For "consistency," the regulations explain that the "more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2). So long as the ALJ sufficiently explained the supportability and consistency of a medical opinion, he has sufficiently evaluated the medical opinion under the regulations. §§ 404.1520c(b)(1), 416.920c(b)(1) ("We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually."). The undersigned notes that the ALJ's opinion can be considered to be a whole when determining whether his factual findings were supported by substantial evidence. *Ledsome v. Comm'r of Soc. Sec.*, 2021 WL 6101427, at *7 (N.D. Ohio Dec. 8, 2021).

Plaintiff asserts the ALJ engages in "impermissible cherry-picking of the evidence" and summarizes evidence to support his rejection of Ms. Maddox's

opinion while also discounting evidence that bolsters the supportability of Ms.

Maddox's claim.  (ECF No. 12, PageID.989-90).  Plaintiff points to Ms. Maddox's

notes which specify Plaintiff "showed some abnormal signs."  (ECF No. 12,

PageID.989) (quoting ECF No. 10, PageID.73)).  Plaintiff alleges the ALJ does not

cite "supportive and probative evidence" bolstering Ms. Maddox's opinion and had

her opinion been properly evaluated "Plaintiff may have been found disabled

pursuant to SSR 85-15."  (*Id.*).  Plaintiff indicates the ALJ called Ms. Maddox's

opinion "unremarkable" but the evidence the ALJ cites regarding this does not use

the specific term "unremarkable" and this is a "legally insufficient explanation

pursuant to the regulations."  (ECF No. 15, PageID.1025).

Plaintiff argues Maddox noted medication side effects such as dizziness and

fatigue and reflected Plaintiff's reports of experiencing confusion, lack of

comprehension, and vertigo which makes it difficult to function.  (ECF No. 10,

PageID.826).  Maddox specified Plaintiff would be unable to meet competitive

standards in these areas: remembering work-like procedures; understanding and

remembering very short and simple instructions; carrying out very short and simple

instructions; sustaining an ordinary routine without special supervision; working in

coordination with or proximity to others without being unduly distracted; making

simple work-related decisions; being aware of normal hazards and taking

appropriate precautions; understanding and remembering detailed instructions;

dealing with stress of semiskilled and skilled work; interacting appropriately with the public; maintaining socially appropriate behavior and traveling in an unfamiliar place. (*Id.* at PageID.829).

Maddox noted Plaintiff would have no useful ability to function in the next areas: maintaining attention for two-hour segments; maintaining regular attendance and being punctual within customary, usually strict tolerances; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; accepting instructions and responding appropriately to criticism from supervisors; getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; responding appropriately to changes in a routine work setting; dealing with normal work stress; and carrying out detailed instructions. (*Id.* at PageID.829). Maddox conveyed Plaintiff would be absent more than four days per month. (*Id.* at PageID.830).

The undersigned suggests that the ALJ sufficiently addressed supportability in finding Ms. Maddox's opinion inconsistent with the overall record of evidence. The ALJ observed that throughout the adjudicatory period, Plaintiff's mental status examinations were unremarkable. (*Id.* at PageID.73) (citing PageID.360; 420; 423; 454; 457; 540; 683; 766; 788; 797; 912). He also noted that Plaintiff's treatment was conservative throughout the relevant period, consisting only of

medication management and therapy.  (*Id.* at PageID.73).  At various medication management sessions Plaintiff "exhibited a generally unremarkable mental status examination" and "generally reported a stable mood while her medications were continued."  (*Id.*).  The ALJ noted that at her annual assessment Plaintiff's mental status was "generally unremarkable" and she enjoyed taking rides on her Harley, going away for the weekend, fishing, target shooting, hunting, and a range of other activities.  (*Id.*).  In October 2020, the ALJ considered that Plaintiff's "symptoms were characterized as manageable while her treatment was continued" and "she was doing well from a psychological standpoint[.]"  (*Id.* at PageID.74).

The ALJ contrasted Ms. Maddox's opinion with the medical record including Plaintiff's unremarkable mental status examinations, conservative treatment consisting of only medication management and therapy, stable mood, unremarkable annual assessment, manageable symptoms, and engagement in many activities such as Harley rides, going away for weekends, fishing, target shooting, hunting, and other activities.  (*Id.* at PageID.73-74).  The undersigned suggests the ALJ adequately stated the consistency because he noted where Ms. Maddox's opinion was not supported by Plaintiff's self-reported activities and other evidence in the record.

As to supportability, when an ALJ finds an opinion "inconsistent with the objective evidence throughout the record, she is simply weighing the objective

evidence in terms of supportability as promulgated by the regulations." *Bundy v. Comm'r of Soc. Sec.*, No. 20-10254, 2021 WL 1822311, at *12 (E.D. Mich. Jan. 29, 2021), *rep. and recommendation adopted*, No. 20-10254, 2021 WL 1220867 (E.D. Mich. Mar. 31, 2021).  Because the ALJ found Ms. Maddox's opinion inconsistent with the medical record and noted why he reached this conclusion, the undersigned suggests that the ALJ has sufficiently addressed supportability.

The ALJ's decision cannot be reversed just because some other evidence exists in the record that might support a different conclusion.  *McClanahan v. Comm'r of Soc. Sec*., 474 F.3d 830, 833 (6th Cir. 2006) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without the fear of court interference.") (citation omitted).  The undersigned suggests the ALJ did not error because he addressed both consistency and supportability in finding Ms. Maddox's opinion unpersuasive.

### 2. *The ALJ's RFC Assessment is Supported by Substantial Evidence*

Plaintiff argues the ALJ erred in crafting the RFC because he failed to properly evaluate the Plaintiff's subjective complaints about vision loss and vertigo pursuant to SSR 16-3p.  (ECF No. 12, PageID.991).  Plaintiff argues the ALJ's rejection of her subjective complaints is a "boilerplate recitation" that her

complaints were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.* at PageID.992) (quoting ECF No. 10, PageID.69). Plaintiff asserts the ALJ "summarized" her function report and testimony before concluding that the "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.* at PageID.994) (quoting ECF No. 10, PageID.69). She argues that the ALJ's explanation of the RFC does not "undermine" the testimony by Plaintiff concerning her alleged limitations. (*Id.*). Plaintiff argues there is no "logical bridge between the evidence and the rejection" of her allegations. (*Id.*).

Plaintiff alleges her testimony established she has vision loss and dizziness which affect her ability to drive, use a computer, as well as read and write. (*Id.* at PageID.995). The ALJ references Plaintiff's treatment for homonymous hemianopsia, but includes no limitation for this condition in the RFC. (*Id.* at PageID.996). Plaintiff asserts there is no logical bridge here and because "the ALJ ignored Plaintiff's subjective complaints regarding her vision and improperly evaluated them, the RFC is deficient and left unsupported by substantial evidence." (*Id.* at PageID.996). In sum, Plaintiff asserts "the ALJ merely summarized the

medical evidence in the guise of a meaningful analysis without showing how the evidence undermined Plaintiff's allegations."  (ECF No. 15, PageID.1027).

Plaintiff alleges this error is harmful because had the ALJ properly evaluated Plaintiff's subjective complaints, "the evaluation of opinion evidence from Plaintiff's treating physicians may have resulted in a finding of persuasiveness in favor of the Plaintiff."  (ECF No. 12, PageID.991).

SSR 16–3p sets forth the standard for evaluating the alleged limitations using a two-step process.  2017 WL 5180304, at *3 (Oct. 25, 2017).  First, the ALJ determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms.  *Id.*  The ALJ acknowledged that Plaintiff's impairments could reasonably be expected to cause her alleged symptoms.  (ECF No.10, PageID.69).

Second, the ALJ must evaluate the intensity and persistence of alleged symptoms and determine whether the alleged symptoms limit the claimant's ability to work.  SSR 16-3p at *3-4.  When reviewing alleged symptoms, the ALJ must consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record."  *Id.* at *4; 20 C.F.R. §§ 404.1529(c)(3), 416.929.  Other relevant factors

include the claimant's daily activities; the "location, duration, frequency, and intensity of your pain or other symptoms"; treatments and measures used to alleviate the symptoms; "[p]recipitating and aggravating factors"; and the effectiveness of medications.  *Id.* § 404.1529(c)(3).

The ALJ concluded "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (ECF No. 10, PageID.69).  The ALJ then went to address the medical evidence on Plaintiff's impairments as follows.

As to Plaintiff's homonymous hemianopsia, the ALJ stated Plaintiff noted "hemianopsia followed by complete visual loss, but noted she had regained her sight [sic] while denying any new focal deficits[.]"  (ECF No. 10, PageID.70). During an April 2019 speech evaluation, Plaintiff was referred to occupational therapy for a visual-perceptual evaluation because she "had to turn the page all different directions to help see the size and position of the shapes."  (*Id.* at PageID.70-71).  The record does not indicate Plaintiff followed the recommendation for evaluation and in July 2019 her "best corrected vision remained 20/20 and 20/25 respectively."  (*Id.* at PageID.71).  At the same evaluation, right homonymous hemianopsia was noted bilaterally, but the only recommendation was to monitor and follow up as needed.  (*Id.*).  In October 2019,

Plaintiff reported blurred vision, but upon examination "her best corrected vision remained 20/20 and 20/25 while generally exhibiting *an unremarkable examination*." (*Id.*) (emphasis added).

As for Plaintiff's assertion of vertigo, the ALJ noted "her providers generally indicat[ed] she had not had any new neurological deficits[.]" (*Id.*). The ALJ observed "the claimant's status post stroke with vertigo causes some degree of limitation, but not to the extent alleged." (*Id.* at PageID.69). He noted "after the claimant was hospitalized for her stroke, her treatment remained conservative with her provider generally indicating she had not had any new neurological deficits." (*Id.* at PageID.70). The ALJ observed that "during a follow up, she denied any neurological symptoms following her stroke [.]" (*Id.*). The same was true at an October 2019 follow up as well as an October 2020 follow up. (*Id.*) (noting no new neurologic deficits at either appointment).

The ALJ determined Plaintiff's subjective complaints were unpersuasive and not credible because they conflicted with the record. *See Dutkiewicz v. Comm'r of Soc. Sec.*, 663 F. App'x 430, 433 (6th Cir. 2016) (finding claimant's testimony was not "fully credible" because his subjective complaints were "at odds with the medical and work-history evidence in the record"). The ALJ did as he needed to and considered the entire case record of subjective and objective reports and concluded that Plaintiff's statements related to the intensity, persistence, and

limiting effects diverged from the medical record as a whole.  (ECF No. 10, PageID.69).  SSR 16-3p requires the ALJ to assess the consistency of complaints with record evidence, which is what the ALJ did here.

The undersigned suggests that the ALJ's determinations on the limiting effects of Plaintiff's symptoms are supported by substantial evidence cited by the ALJ in making his assessment as reiterated above—objective examinations were largely normal, plaintiff was treated with conservative measure etc.  These normal or mild findings support the ALJ's conclusion about Plaintiff's complaints.   When the decision of the ALJ is supported by substantial evidence, it must be upheld. *See Callahan v. Comm'r of Soc. Sec.*, 2019 WL 1375516, at *1 (E.D. Mich. Mar. 27, 2019) (citing *Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989)).

### G.    Conclusion

Plaintiff has the burden of proof on her statements of error.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  Plaintiff has not shown legal error that would upend the ALJ's decision.  For these reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 12), **GRANT** Defendant's motion for summary judgment (ECF No. 14), and **AFFIRM** the Commissioner of Social Security's decision.

## II.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must precisely recite the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: January 20, 2023                    s/Curtis Ivy, Jr.
                                          Curtis Ivy, Jr.
                                          United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on January 20, 2023.

                                          s/Kristen MacKay
                                          Case Manager