UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONYA LEE MASON,

    Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

Case No. 22-cv-10012
Hon. Matthew F. Leitman

**ORDER (1) SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFF'S OBJECTIONS (ECF No. 19) TO REPORT AND RECOMMENDATION (ECF No. 18); (2) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 12); (3) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 14); AND (4) REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

In this action, Plaintiff Tonya Lee Mason challenges the denial of her application for supplemental security income benefits under the Social Security Act. (*See* Compl., ECF No. 1.) Both Mason and Defendant Commissioner of Social Security filed motions for summary judgment. (*See* Mots., ECF Nos. 12, 14.) The assigned Magistrate Judge then issued a Report and Recommendation in which he recommended that the Court deny Mason's motion and grant the Commissioner's motion (the "R&R"). (*See* R&R, ECF No. 18.)

1

Mason has now filed timely objections to the R&R. (*See* Objections, ECF No. 19.) For the reasons explained below, the Court **SUSTAINS** the objections in part, **OVERRULES** the objections in part, **GRANTS IN PART AND DENIES IN PART** Mason's motion for summary judgment, **DENIES** the Commissioner's motion for summary judgment, and **REMANDS** for further administrative proceedings.

**I**

**A**

On April 2, 2019, Mason applied for supplemental security income benefits under the Social Security Act. (*See* ECF No. 10, PageID.61.) In her application, Mason claimed that the following impairments, among others, limited her ability to work: blind or low vision, dizziness, confusion, anxiety, and depression. (*See id.*, PageID.277.) Many of these conditions first manifested (or worsened) after Mason suffered a stroke in December 2018. (*See id.*, PageID.916.) The Social Security Administration denied her application on August 6, 2019. (*See id.*, PageID.61.)

**B**

On August 21, 2019, Mason requested a hearing on her application before an Administrative Law Judge (the "ALJ"). That hearing was held on December 10, 2020. Both Mason and a vocational expert testified at the hearing. (*See id.*, PageID.82-115.)

The ALJ also considered opinions from consultants who had examined Mason and/or reviewed her medical records. Relevant here, Mason submitted, and the ALJ considered, a treating source statement from Claire Maddox, a licensed social worker who had treated Mason. (*See id.*, PageID.826-830.) In that statement, Maddox said that Mason's "[s]everity of mental impairment and symptoms" were as follows:

> Tonya reports experiencing confusion at times due to her stroke, not always understanding the directions or directive, lack of comprehension at times when people talk to her, vertigo constantly which makes it very difficult to function. Headaches, vision problems, problems focusing, [and] dizziness to the point of nausea.

(*Id.*, PageID.826.) Maddox also completed a "Mental Residual Functional Capacity Questionnaire." (*Id.*, PageID.827-830.) On that form, Maddox indicated that Mason had a "low IQ or reduced intellectual functioning," had a psychological condition that could "exacerbate [her] experience of pain or other physical symptoms," and could be expected to be absent from work "at least four days per month." (*Id.*, PageID.830.) Maddox also noted that with respect to Mason's "mental abilities and aptitudes needed to do semiskilled and skilled work," Mason (1) was "unable to meet competitive standards" with respect to "understand[ing] and rember[ing] detailed instructions" and "deal[ing] with the stress of semiskilled and skilled work" and (2) had "no useful ability to function" when it came to "carry[ing] out detailed instructions." (*Id.*, PageID.829.)

3

# C

The ALJ issued a written decision denying Mason's application for benefits on January 26, 2021. (*See id.*, PageID.61-76.) The ALJ ultimately concluded that Mason was not disabled and therefore not entitled to benefits. (*See id.*, PageID.62.) Two aspects of the ALJ's opinion are relevant here.

First, the ALJ "found" Maddox's "opinion to be not persuasive [because] it [was] inconsistent with the overall record of evidence." (*Id.*, PageID.73.) In support of that finding, the ALJ identified the specific portions of the "overall record of evidence" that he said was inconsistent with Maddox's opinion:

> On July 27, 2020, Carrie Maddox, MSW, one of the claimant's medical providers, opined the claimant was unable to meet competitive standards or had no useful ability to function in subsets concerning the mental ability and aptitudes needed to do unskilled and semi-skilled work. She further opined the claimant would miss more than 4 days of work per month (B15F). I find this opinion to be not persuasive, as it is inconsistent with the overall record of evidence. Throughout the adjudicatory period, the claimant's mental status examinations were generally unremarkable (B3F/2; B5F/2, 5; B7F/3, 6; B9F/50; B12F/4; B13F/9; B14F/5, 14; B23F/5). Additionally, throughout the adjudicatory period, the claimant's treatment remained conservative, consisting of only medication management and therapy. Initially, in September and October of 2019, the claimant underwent an assessment and evaluation that showed some abnormal signs, but overall, were generally unremarkable (for example B13F/13-15; B14F/26, 35-27). Subsequently, the claimant underwent several medication management notes where she exhibited a generally unremarkable mental status examination (B13F/9, 15; B14F/5; B23F/5). During

4

> this time, she generally reported a stable mood while her medications were continued (B13F/9; B14F/14-15; B16F/13). ). Later on, in September of 2020, the claimant underwent an annual assessment that was generally unremarkable. At the time, it was noted she enjoyed Harley rides, going away for the weekend, fishing, target shooting, hunting, and other activities (B23F/18-31). Lastly, in October of 2020, the claimant's symptoms were characterized as manageable while her treatment was continued (B23F/5-6). At this time, it was noted she was doing well from a psychologic standpoint (B24F/3).

(*Id.*, PageID.73-74.)

Second, the ALJ determined that while Mason suffered from a "right homonymous hemaniopsia" (*id.*, PageID.64) that "result[ed] in some degree of functional limitation" in her right eye (*id.*, PageID.70), the condition did not limit Mason to the extent she alleged:

> [T]he claimant's right homonymous hemaniopsia result in some degree of functional limitation, but not to the extent alleged. Initially, in December of 2018, the claimant began reporting blotchy vision with missing spots while indicating she experienced pressure and headaches if she looked at something for a few minutes (B1F/2). At the time, upon examination, she exhibited an abnormal field to finger counting, filed temporally; and nasal bilaterally, but otherwise, was generally unremarkable (B1F/4). However, in March of 2019, during a follow up after her stroke noted above, it noted the claimant had hemianopsia followed by complete visual loss, but noted she had regained her sign while denying any new focal deficits (B7F/2). Afterward, in April of 2019, during the speech evaluation, it was noted during a subtest that she had to turn the page all different directions to help see the size and position of the shapes. It further noted she had to place her hand over her right eye because of reported stabbing

5

> pain. At this time, the claimant was referred to occupational therapy for a visual-perceptual evaluation (B8F), yet the record did not indicate the claimant followed up with that recommendation. A few months later, in July of 2019, an examination noted the claimant's best corrected vision remained 20/20 and 20/25 respectively. Upon examination, right homonymous hemaniopsia was noted in the bilateral eyes, but was only recommended to monitor with her to follow as needed (B10/F1). Afterward, in October of 2019, the claimant reported she experienced blurred vision that was poor with glasses. However, upon examination, her best corrected vision remained 20/20 and 20/25 while generally exhibiting an unremarkable examination. Overall, her medical provider only recommended for her to follow up in a year (B11F/3-5).
>
> [….]
>
> Throughout the adjudicatory period, with respect to the claimant's right homonymous hemaniopsia, she occasionally had some abnormal signs noted (B1F/2; B7F/2; B8F/2), but overall, her best corrected vision was 20/20 and 20/25 with her medical providers only recommending for it to be monitored (B10F/1; B11F/3-4).

(*Id.*, PageID.70-71, 73.) The ALJ then accounted for Mason's right homonymous hemaniopsia by placing certain restrictions in her residual functional capacity ("RFC"). More specifically, the ALJ explained that Mason's "right homonymous hemaniopsia would limit [Mason] to no operation of a motor vehicle as part of the work duties" and that Mason would need to "avoid activities requiring working at hazardous unprotected heights and with hazardous machinery, which includes

6

working with conveyors, blades and hazardous electrical work." (*Id.*, PageID.74.) The ALJ then included those restrictions in Mason's RFC. (*See id.*, PageID.68.)

After "considering [Mason's] age, education, work experience, and [RFC]," the ALJ concluded that "there [were] jobs that exist[ed] in significant numbers in the national economy that [Mason could] perform." (*Id.*, PageID.75.) The ALJ therefore concluded that Mason was "not disabled." (*Id.*, PageID.76.)

Mason appealed the ALJ's decision to the Appeals Council, but that body denied review. (*See id.*, PageID.48.)

## II

On January 4, 2022, Mason filed this action seeking judicial review of the administrative decision denying her application for benefits. (*See* Compl., ECF No. 1.) Mason and the Commissioner then filed cross-motions for summary judgment. (*See* Mason Mot., ECF No. 12; Comm'r Mot., ECF No. 14.) In her motion for summary judgment, Mason sought a "remand for further administrative proceedings." (*Id.*, PageID.977.) In support of that request, Mason made two arguments. First, she argued that the ALJ's decision was "not supported by substantial evidence because the ALJ failed to properly evaluate the opinion evidence of Carrie Maddox, MSW." (Mason Mot., ECF No. 12, PageID.976.) Second, Mason asserted that the ALJ failed to properly "evaluate [her] subjective complaints." (*Id.*) In connection with this second objection, Mason said, among

7

other things, that "[d]espite finding her vision impairment to be severe, the ALJ failed to include any limitation for [Mason's] vision in the RFC." (*Id.*, PageID.995.)

The assigned Magistrate Judge issued the R&R on the parties' cross-motions on January 20, 2023. (*See* R&R, ECF No. 13.) The Magistrate Judge recommended granting the Commissioner's motion and denying Mason's motion. (*See id.*) With respect to Mason's argument regarding the ALJ's treatment of Maddox's opinion, the Magistrate Judge concluded that "the ALJ sufficiently addressed" Maddox's opinion and explained why he "found Ms. Maddox's opinion inconsistent with the medial record." (*Id.*, PageID.1045, 1047.) As to Mason's second argument, the Magistrate Judge found that "[t]he ALJ did as he needed to and considered the entire case record of subjective and objective reports and concluded that [Mason's] statements related to the intensity, persistence, and limiting effects diverged from the medical record as a whole." (*Id.*, PageID.1051-1052.)

### III

Mason filed her objections to the R&R on February 3, 2023. (*See* Objections, ECF No. 19.) Mason objects to both conclusions of the Magistrate Judge described above. (*See id.*) The Court will address each objection separately.

### A

In Mason's first objection, she again contends that the ALJ did not apply the proper "articulation standard required by the regulations" when he decided to

discount the opinion offered by Maddox. (*See id.*, PageID.1055-1056.) Mason says that the applicable regulations required the ALJ to discuss the "supportability" and "consistency" of Maddox's opinion.[1] (*See id.*) And Maddox insists that the ALJ instead "gave [a] boilerplate explanation to reject the opinion evidence [offered by Maddox] without explaining *how* the evidence undermined the specific limitations contained in [her] opinion[s]." (*Id.*, PageID.1056; emphasis in original).

While the Court does not share Mason's view that the ALJ "gave [a] boilerplate explanation" for his rejection of Maddox's opinion, the Court agrees with Mason that the ALJ did not sufficiently explain how the evidence in the record undermined Maddox's opinion. As described above, the ALJ began his discussion of Maddox's opinion by noting Maddox's finding that Mason "was unable to meet competitive standards or had no useful ability to function in subsets concerning the mental ability and aptitudes needed to do unskilled and semi-skilled work." (ECF No. 10, PageID.73.) The ALJ then identified evidence in the record that, in his view, was inconsistent with Maddox's conclusion. (*See id.*, PageID.73-74.) But the ALJ

---

[1] "According to the regulations, 'supportability' means that '[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be.' 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). For 'consistency,' the regulations explain that '[t]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be.' 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2)." *Hardy v. Comm'r of Soc. Sec.*, 554 F.Supp.3d 900, 905 (E.D. Mich. 2021).

did not explain *how* any of the evidence that he identified undercut Maddox's analysis. And that failure matters because it is not clear that any of the evidence identified by the ALJ conflicted with Maddox's opinion.

Maddox's opinion related to Mason's *cognitive* abilities (*i.e.*, Mason's "mental abilities" such as her ability to "understand and remember detailed instructions," and "carry out" those instructions). However, it does not appear that much, if any, of the evidence cited by the ALJ as undermining Maddox's opinion relates to Mason's *cognitive* functioning. For example, the ALJ cited Mason's medication or therapy regimen, but it is not clear that either of those things is in any way related to her cognitive functioning. Indeed, the very records cited by the ALJ concerning her medications noted that they helped Mason maintain a "stable mood" (*id.*, PageID.74), not that they improved her cognitive functioning. The ALJ also cited Mason's statements that she was able to hunt, fish, and ride motorcycles, but it is not obvious that any of those activities require a higher level of cognitive functioning than Maddox attributed to Mason. And while the ALJ also cited to several "mental status examinations" that the ALJ said were "generally unremarkable," those examinations dealt primarily with Mason's "mood, "affect," and "orientation," not her cognitive abilities. (*Id.*, PageID.766, 912.) Simply put, the evidence relied upon by the ALJ seems to relate primarily to Mason's *emotional* health rather than to her cognitive abilities, and thus it is not clear how or why that

10

evidence undercuts Maddox's opinion that Mason lacks the cognitive ability to perform skilled or semi-skilled work. Because the conflict between the evidence cited by the ALJ and Maddox's opinion was not clear, it was incumbent on the ALJ to explain how that evidence undermined Maddox's opinion.

For all of these reasons, the Court will **SUSTAIN** this objection and **REMAND** this action for further administrative proceedings. On remand, if the ALJ discounts Maddox's opinion, the ALJ shall specifically explain how the medical evidence in the record is inconsistent with that opinion.

B

Next, Mason objects to "[t]he Magistrate Judge's finding that the ALJ properly evaluated [her] subjective complaints." (Objections, ECF No. 19, PageID.1058-1059.) Mason says that "the ALJ did not explain how the evidence in the record summarized in the [ALJ's] decision undermined the subjective allegations [she (Mason)] presented." (*Id.*, PageID.1058.) The only specific condition that Mason identifies in her objections where the ALJ purportedly did not sufficiently evaluate her subjective complaints was her "vision impairment of right homonymous hemaniopsia." (*Id.*) Mason insists that despite her subjective complaints of vision impairment, and even though the ALJ found that impairment to be severe, the ALJ (1) failed to place "any limitation within the RFC that would account for finding her vision impairment severe" and (2) "inconsistently relied on mild or normal findings

11

to reject [Mason's] allegations" regarding her impairment. (*Id.*, PageID.1058-1059.) The Court will overrule this objection.

Mason's objection does not accurately reflect the record. The ALJ did not ignore Mason's right homonymous hemaniopsia. Instead, he put limitations in Mason's RFC to account for that impairment. As described above, the ALJ wrote that because of Mason's right homonymous hemaniopsia, her RFC would "would limit [Mason] to no operation of a motor vehicle as part of [her] work duties" and would also "avoid activities requiring working at hazardous unprotected heights and with hazardous machinery, which includes working with conveyors, blades and hazardous electrical work." (ECF No. 10, PageID.74.) Thus, contrary to Mason's assertion, the ALJ did not ignore Mason's vision impairment when crafting Mason's RFC. Moreover, as quoted in full above, in the section of the ALJ's decision discussing Mason's right homonymous hemaniopsia, the ALJ explained why Mason's that impairment "result[ed] in some degree of functional limitation, but not to the extent [Mason] alleged." (*Id.*, PageID.70.) Indeed, the ALJ identified several pieces of medical evidence in the record and explained that while Mason was diagnosed with right homonymous hemaniopsia, no specific treatment for that condition was ordered, and "upon examination, [Mason's] best corrected vision remained 20/20 and 20/25 while generally exhibiting an unremarkable examination." (*Id.*, PageID.71.)

12

Mason has not persuaded the Court that the ALJ improperly evaluated her subjective complaints. Mason's second objection is therefore **OVERRULED**.

IV

For all of the reasons explained above:

- Mason's objections to the R&R (ECF No. 19) are **SUSTAINED IN PART AND OVERRULED IN PART**;

- Mason's motion for summary judgment (ECF No. 12) is **GRANTED IN PART** to the extent that it seeks a remand related to the ALJ's treatment of Maddox's opinion and **DENIED** in all other respects;

- The Commissioner's motion for summary judgment (ECF No. 14) is **DENIED**; and

- This action is remanded for further administrative proceedings consistent with this order.

**IT IS SO ORDERED**.

                                      s/Matthew F. Leitman
                                      MATTHEW F. LEITMAN
                                      UNITED STATES DISTRICT JUDGE

Dated: March 13, 2023

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 13, 2023, by electronic means and/or ordinary mail.

                                      s/Holly A. Ryan
                                      Case Manager
                                      (313) 234-5126